The next case today is Felix Lajans v. AT&T Mobility Puerto Rico, Inc. Appeal number 20-1972. Attorney Lugo Miranda, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, your honors. My name is Anibal Lugo, and I represent the appellant in this case, Felix Lyons. Your honors, appellant submits that the district court's decision in this case should be reversed, basically because Mr. Lyons was able to prove a prima facie case of discrimination under ADA. He also was able to prove a prima facie case of discrimination under ADA for disability. And he also was able to create a genuine issue as to whether AT&T's alleged non-discriminatory reason for his termination was pretext, or at the very least, that the rationale behind the alleged non-discriminatory reason was pretextual. And we understand that a fair-minded jury under those circumstances could have returned a verdict in favor of Mr. Lyons. Now, regarding... Mr. Lugo, could I ask you a question about number four? You list four issues on appeal on page six, seven of your brief. And the fourth issue is whether the district court erred in I may have missed it, but I didn't actually see, when I looked through your brief, any argument on that issue. Did I miss that? Are you waiving that? I just didn't... I wasn't sure whether that was something you were pressing, because I didn't see it in the rest of the brief. You're correct, your honor, that we did not address specifically that the court should reverse that portion of the judgment. But in our brief, it is basically contained in an indirect way, inasmuch as if the court grants our remedy, which is the reversal of the judgment, then by implication, it has to also allow in remand for the cases under law 80, which is the unjust dismissal part of the case, and the case under 1802 for damages, because it would basically give life again to the whole spectrum of Mr. Lyons' case, which is that he was fired without cause and for discriminatory reasons. Also, if the court rules in our favor and allows Lyons either to litigate his discrimination claims, then by obligation, then the aspect or the part of the claim that has to do with unjust dismissal also comes alive. Let me ask you a question about, do you agree with the statute of limitations decision on the part of the district judge that May 31, 2017 is the correct date? Yes, I agree with the ruling in the sense that Mr. Lyons would be impeded from requesting monetary compensation for those acts that are time barred. However, it is our contention that the fact that the evidence would show the conduct by the defendant, in this case AT&T, the theory of our case and the facts that preceded the termination would be relevant and admissible evidence during a trial scenario. But in page 27 and 28 of your brief, you list a number of facts in which you indicate that these facts would demonstrate that the employer's actions were pretextual. But when I looked at those facts, they're virtually all pre-May 31, 2017. Well, our purpose, your honor, is to depict that upon returning from his medical leave in April of 2016, Mr. Lyons was effectively or de facto demoted and that the conduct or the acts whereby he became demoted are essential and are relevant as evidence for the fact finder, ultimately the jury, to determine whether in effect Mr. Lyons was demoted to the same position of Giancarlo Capelli who was the younger and less experienced employee who was allowed to continue in the employee because his position was decided not to be eliminated because of surplus, which our contention is that because of the de facto demotion suffered by Mr. Lyons at the moment of determining who would have to be fired, it would have to be Mr. Capelli because he was the employee with less seniority in that employment classification. So what are we to make of the London Consulting recommendation that your client's position be eliminated, which was a recommendation as early as November 2015? Yes, well, the November consulting recommendation certainly predates July 2017, which was the moment when Mr. Lyons, my client, was fired and AT&T's preferred non-discriminatory reason was that in June of 2017, the decisional unit, which was another body composed of AT&T personnel, sat down and evaluated the present market and operational circumstances and decided that the sales training specialist position. Now, our contention is that yes, the London Consulting firm had made a recommendation back at the end of 2015, but it still, both positions failed the Burdine test in the sense that the employer never articulated the reasons why one position was eliminated versus another position. So that the evidence, although we do have evidence of pretext, we understand that by not putting the plaintiff in a position to analyze and the court to be able to weigh in the factors that were considered to make a determination of eliminating one position versus the other, that was never on the record. Well, did you seek that in discovery? I beg your pardon? Did you seek that in discovery? Yes, certainly from the documents that we requested, the request for admissions and interrogatories, we requested everything that pertained to the decision of Lyons termination. But what did discovery disclose pursuant to that inquiry? The discovery that we were able to get were basically statements from the members of the decisional unit endorsing the London Consulting firm's recommendation of almost two years prior that the position of the sales training manager should be eliminated. I thought that it is in the record as to why they made that recommendation. I thought AT&T was merging and they were subsuming direct TV and when they subsumed direct TV, they concluded that the AT&T sales staff would take over all sales and they didn't need a direct TV separate sales staff and therefore you don't need a sales training manager, which is what your client was, for a branch of the operation that was going to be subsumed by AT&T. I thought that was the rationale. That was the rationale and or the reality of how the merge was going to pan out or unfold. But that doesn't detract from the argument that, number one, our contention is that our client had ceased to be the sales training manager altogether. And the evidence shows, or at least throws some light into the veracity of that fact. And that if the determination to fire the sales manager, the sales training manager, was supported by the market factors and so on, the fact of the matter is that my client no longer was in that position. So Mr. Capelli was the sales training specialist with no managerial experience, is that correct? Well, whether he had managerial experience or not, I cannot answer that. But his position did not entail supervisory functions as the sales training manager position had. So is it your position that in choosing who to terminate, that your client was qualified for the same job that Mr. Capelli retained? Not only qualified, he was actually doing the job because all of his supervisory functions and managerial, the managerial aspect of his position had been stripped. And it is our contention that Capelli and Lugo, who were the other sales training specialists, began to treat my client at the same level and did not recognize his authority. There is an incident that resulted in my client's disciplinary action, which was a meeting held where my client presented a sales training program that Matamayor and Rodriguez Colon, his superiors, had instructed him to recruit Lugo and Capelli and to join him in the elaboration of this program, which was called Compass. And during the meeting, Capelli and Lugo straightforwardly said that they refused to join the program unless the instructions would come from above, meaning Matamayor and Rodriguez Lugo. And my client felt that they were being insubordinate because they were on paper supposed to report to him and to respond to his guidelines and instructions. Now, Capelli and Lugo were never reprimanded nor in any way disciplined for refusing to collaborate or work with alliance in that program. And actually, they never worked in Compass. Shortly thereafter, a few months thereafter, my client was fired. Mr. Lugo, we've gone past your time by some fair amount, and so I would like to thank you for your argument. If you would mute your device at this point. I beg your pardon, Your Honor? We're going to hear from brother counsel at this point. Okay, thank you very much, Your Honor. Yes, Mr. Benitez. Yes, good morning, judges. May it please the court. My name is Jose Benitez, and I represent AT&T Mobility Puerto Rico, Inc., now Liberty Mobile Puerto Rico, Inc. The first thing I want to say is that all plaintiffs' appellant allegations are time barred except the termination of plaintiff that was decided by the court and conceded by appellant. That's why you don't see that in the appeal briefs. Second of all, the appellant did not appeal the district court's decision to state that there was just cost on the Puerto Rico's wrongful termination act, law 80 of May 30, 1976. He did not appeal that, and the district court correctly concluded that Mr. Lyons was terminated solely as the result of a reorganization and reduction in force implemented in the context of a merger of two companies. AT&T acquired DirecTV in May of 2014, and since May of 2014, AT&T had been conducting different reduction in forces to terminate the surplus employees. There was a surplus of sales people. There was a surplus of sales support people in the stores. AT&T, in order to reduce costs, they started closing DirecTV's retail location. Counselor, assuming there's a reduction in force, AT&T had to make a decision as to who was going to be terminated. Correct. So as between Capelli and Mr. Leijon, why Mr. Leijon? Well, the reason is easy to explain. Mr. Lyons was a sales training manager, and Mr. Capelli was a sales training specialist. And what's the difference? The difference is that Mr. Capelli reported to Lyons, Lyons occupied a managerial position. Capelli was just a trainer. A training specialist is just a trainer. Thus, those were talking about different occupational classifications. I see that you're talking about different reporting requirements. What was the difference in the actual jobs? Very good. In the actual job, DirecTV had many training materials that applied all Latin America and Puerto Rico. They would issue those materials, and then the training manager would adjust those materials to their territory, in this case, Puerto Rico, and then they would train the specialists, the trainers, on what to do, on how to do it. They prepared those schedules. They met with other managers and made decisions on how to carry out those trainings. In addition to that, the training manager was the direct supervisor of the two training specialists in Puerto Rico. As such, he had the ability and capacity to make decisions about their evaluations, their employment, salary raises, discipline, everything. They had capacity to do that. Mr. Laenz was Mr. Capelli's supervisor since he began working for AT&T in 2013, until the date of his termination. I want to point something out. I need the rest of that answer. I need the rest of the answer. You still haven't told me what the difference is between Capelli's position and Laenz's position. What was Capelli doing that was training employees, and at some point in time, in 2016, there was a project that was going to be implemented to increase sales of DirecTV, and Mr. Laenz was asked, I need someone to help me by the executive director. I need someone to help me with this project, and he recommended Mr. Capelli. So that's why Mr. Capelli, for a period of time, with the recommendation of Laenz, he was working on a different project, Project Calle, helping the sales team implement marketing skills to sell DirecTV in certain areas here in Puerto Rico. But mainly, the short answer is, Laenz was always a manager. Capelli was a trainer. So, Laenz was a manager, administrator, and he didn't do anything else except supervise people? What substantive work? I mean, is that the only substantive work he did in sales? Aside from that, he was responsible for meeting with the different training managers all throughout Latin America, working on training programs, and adapting those training programs to Puerto Rico. In Puerto Rico, that was a lot of work, because Puerto Rico, even though it was assigned to Latin America, it had a link to the United States. So there were things in those presentations, in the offers, everything, in different laws that needed to be adjusted to here in Puerto Rico, not even Mr. Capelli. So you're saying that there was no overlap between what Laenz was doing and Capelli? None whatsoever. And Judge, that's why when the companies are merged and London Consulting did their efficiency assessment report in November of 2015, they decided, well, we don't need a sales training manager in Puerto Rico or any other market. This was a nationwide reorganization, not only in Puerto Rico. They eliminated the position completely, because at AT&T, all of that training and all of the adjustments to the training were done by a team that is located in Dallas, Texas. So they said, this position is not needed. Mr. Capelli stayed, and Mr. Lugo, who was the other training specialist, they stayed because they were trainers. And under the AT&T organization, AT&T was going to need trainers to go and train this AT&T salespeople on what was direct TV, what services they provided, and how everything worked. So that's why the trainers stayed, but the manager was laid off. And I want to add to that, that the reason why Mr. Laenz was not able to put forth absolutely no evidence to contradict any of the things that AT&T put forth to justify Mr. Laenz's termination is because Mr. Laenz did not conduct discovery on that. He was going to depose one of the decision makers as to the termination and the reasons for the termination, and at the last moment, they stepped out and they didn't take that deposition. So all the declarations you see in the motion for summary judgment and the briefs, all of the evidence you see there, that was evidence that was produced voluntarily by AT&T. They didn't ask any questions, and then we attached it to the motion for summary judgment and the reconsideration that were filed. In light of that, the court saw that there was no nothing to contradict what we were saying. Mr. Laenz did not participate in the process, so he had nothing to say about it. So the court correctly concluded that there was just cause for termination, and Apellant did not appeal that, which means that he has waived the determination that there was just cause for his termination under Puerto Rico law 80. Okay. Further questions from the court? No. Thank you, Mr. Benitez. Sure. Judge, I believe that concludes arguments in this case. Yes. Attorney Lugo Miranda and Attorney Benitez Meyer, you can disconnect from the hearing at this time.